KULBER, Plaintiff-Appellee, v FAIRMONT CREAMERY Co., Defendant-Appellant.
VISCONTI, Plaintiff-Appellee, v FAIRMONT CREAMERY Co., Defendant-Appellant.

Ohio Appeals, Eighth District, Cuyahoga county.

Nos. 20874-20875. Decided April 26, 1948.

P. C. Barragate, for plaintiffs-appellees.
Walter & Haverfield, Cleveland, for defendants-appellants.

## OPINION

By SKEEL, J:

These actions come to this court on appeal on questions of law from a final judgment for the plaintiff appellees in the common pleas court of Cuyahoga County.

The plaintiffs appellees were both engaged in the fish business. On April 16, 1946, each of the plaintiffs entered into a contract with the defendant appellant for the purchase of a large quantity of processed shrimp. The shrimp at the time of the purchase was in storage in Pittsburgh, Pennsylvania. The plaintiffs allege in their petitions that they received and paid for the shrimp ordered (3990 lbs @ 65c per lb—$2593.50 as to plaintiff, Star Fish Co) (5280 lbs. @ 65c per lb.—$3432.00 as to plaintiff, Fulton Fish Co.).

The plaintiffs further allege that the defendant delivered said shrimp in a frozen condition as directed by plaintiffs, to The Distribution Terminal Warehouse Company, a cold storage plant in Cleveland. Delivery was made on or about April 19, 1946. That upon re-sale of some of the frozen processed shrimp the customers to whom it was delivered "returned to him (said shrimp) as being unsatisfactory and unfit for human consumption." That upon discovery that said shrimp was unsatisfactory and unfit for human consumption, the plaintiffs respectively notified the defendant and asked that they rescind the contract· and refund the purchase price which the de--

fendant refused to do. That the defendant in making the sale to the plaintiffs, expressly warranted the shrimp to be "first class shrimp" and that the shrimp delivered to plaintiffs was not as warranted. The plaintiffs then ask for damages in the amount of the purchase price and storage charges.

The defendant's answer to the petition in the Fulton Fish Company case was a general denial, while in the Star Fish Company case the sale of the shrimp and the receipt of the purchase price is admitted but all other claims are denied by general denial.

Upon trial, judgment was entered against the defendant and for the plaintiff in each case in the full amount prayed for.

The defendant assigns as error in each case:

(1) The total failure of proof as to the condition of the shrimp as of the date of delivery;

(2) That the judgment is manifestly against the weight of the evidence;

(3) That the court erred in overruling defendant's motions for new trial;

(4) That the court erred in the admission of testimony objected to by the defendant and in excluding testimony offered by the defendant;

(5) Other errors appearing on the record.

The theory upon which the plaintiffs presented their respective cases was that the defendant induced the plaintiffs to purchase the shrimp upon the express warranty that it was "first class shrimp" that when the shrimp were received it did not fulfill said warranty, whereupon the plaintiffs rescinded the contract and demanded back the purchase price which had been paid, together with such storage charges as had been incurred.

An examination of the evidence, when considered in the most favorable light for plaintiffs, discloses that when the shrimp was received by the plaintiffs, it was put in cold storage at their direction and that they did not examine or inspect it to determine the condition thereof at that time; that it remained in storage at temperatures between 7 degrees to 11 degrees above zero for at least three weeks before any of the shrimp was resold to the plaintiffs' customers and deliveries made on such orders; that after such deliveries of a part of the shrimp had been made to the trade, complaints were received about the condition of the shrimp. After receiving such complaints the plaintiffs contacted the defendant and asked defendant to "cancel the contract" which the defendant refused to do. The plaintiffs' evidence also shows that after the

offer to rescind the sale, which was refused by defendant, the plaintiffs continued to make sales to other customers and as to such sales the plaintiffs received commplaints. In August the City Health Department was called and upon inspection of the shrimp, it was then found to be unfit for human consumption and ordered destroyed. ,Neither of the plaintiffs ever inspected or examined the shrimp, nor were any of the customers of the plaintiffs who had complained about its quality, or had for that reason rejected it, called to testify as to its true condition.

There was no evidence therefore that at the time the shrimp was delivered to the plaintiffs it was not as represented. Evidence that the shrimp was not acceptable to the plaintiff's customers three or four weeks after it was delivered to the buyer, is not sufficient.

Sec. 8427 GC provides as follows:

"1. When goods are delivered to the buyer which he has not previously examined, he is not deemed to have accepted them unless and until he has had a reasonable opportunity of examining them for the purpose of ascertaining whether they are in conformity with the contract.

2. Unless otherwise agreed, when the seller tenders delivery of goods to the buyer, he is bound, on request to afford the buyer a reasonable opportunity of examining the goods for the purpose of ascertaining whether they are in conformity with the contract.

3. When goods are delivered to a carrier by the seller, in accordance with an order from or agreement with the buyer, upon the terms that the goods shall not be delivered by the carrier to the buyer until he has paid the price, whether such terms are indicated by marking the goods with the words 'collect on delivery' or otherwise, the buyer is not entitled to examine the goods before payment of the price in the absence of agreement permitting such examination."

In Williston on Sales, paragraph 476, the author says:
"If the buyer receives goods into his possession and fails to inspect them within a reasonable time after he has had opportunity to do so, he thereby waives the condition and is thereafter to be treated as having assented to take or keep title to the goods. In the early cases it seems to have been assumed that the time to inspect the goods was as soon as they were offered to the buyer; but it soon became apparent that goods were often of such a character or so packed that immediate

examination was impossible; testing or opening the packages was essential. The courts have allowed the buyer under these circumstances a reasonable time to. make the examination. In some cases this has been carried very far. No more definite rule can be laid down than that such a time as is reasonable having regard to all the circumstances of the case, is permitted. Custom is of importance in determining what is a reasonable time. Where not only inspection but testing is permitted the buyer either by the express terms of the contract or otherwise, the same rule of reasonableness limits the time allowing for testing. A failure to inspect or test within the time permitted by the contract or the law is a waiver of the condition qualifying the buyer's obligation to become owner of the goods or to pay for them or of a condition subsequent authorizing return of the goods."

The shrimp was received by the plaintiffs in five pound cans so that the ability to inspect it was a relatively easy matter. The evidence discloses that unless process shrimp was kept at relatively low and constant temperatures, it was highly perishable. A reasonable time within which to examine the shrimp after receiving it would be a very short time. The plaintiffs having failed to make timely examination to determine whether or not they were as represented, constituted a waiver of the right to return the goods for that reason.

The Sales Code provides three remedies for breach of warranty. (§8449 GC) (1) recoupment; (2) counter-claim; (3) rescission. The plaintiffs in seeking their remedy against the defendant for the alleged breach of warranty, that is that the shrimp were not "first class" shrimp chose the remedy of recission. Having asserted such claim, by the provisions of §8449 GC, they are precluded from seeking any of the other remedies provided for by the statute.

In seeking redress under the remedy of rescission, the buyer must act promptly in rejecting the goods after discovery that the goods are not as represented and must also put the seller in "statu quo."

Upon the undisputed evidence, the plaintiffs did not act with reasonable dispatch to determine the condition of the shrimp on the date of delivery. The evidence also shows that after they received complaints from their customers and they then asked defendant to cancel the contract and return the purchase price, which had been paid, they continued to make sales and deliver shrimp on such orders. By their own acts, therefore, after they had knowledge of their claim of breach

of warranty they dealt with the goods in such a way as to make it impossible to put the defendant in "statu quo." They could not therefore after thus dealing with the shrimp, claim the right of rescission.

For the foregoing reasons the judgment is reversed and final judgment is entered for defendant in each case. Exceptions. Order See Journal.

HURD, PJ, MORGAN, J, concur.